UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
EUROPA MARITIME S.A.,

                                       **08 Civ. 9523 (DAB)**

                Plaintiff,

      -against-

MANGANESE TRANS ATLANTIC CORPORATION,
MANAGERS SYSTEMAR CO. LTD., EMPIRE
CHEMICAL, LLC, and PRIVAT INTERTRADING,

               Defendants.
--------------------------------------X


**MEMORANDUM OF LAW
IN OPPOSITION TO MOTION**


Garth S. Wolfson,

    Of Counsel


**MAHONEY & KEANE LLP
Attorneys for Plaintiff
11 Hanover Square, Tenth Floor
New York, New York
(212) 385-1422**

## TABLE OF CONTENTS

*Page*

ARGUMENT........................................................1

POINT I.    THE  ISSUE  NOW IMPROPERLY RAISED BY MTAC HAS
            ALREADY BEEN REPEATEDLY DECIDED BY THE COURT......1

POINT II.   IN  ANY EVENT, THE COURT WAS ENTIRELY CORRECT
            IN RESPECTING THE PARTIES' SECURITY AGREEMENT.....7

CONCLUSION....................................................11

## ARGUMENT

**POINT I.**   **THE ISSUE NOW IMPROPERLY RAISED BY MTAC HAS ALREADY BEEN REPEATEDLY DECIDED BY THE COURT.**

MTAC's newest counsel (its third thus far) argues that the impact of the "reservation of rights" language of the parties' security agreement has not yet been addressed by the Court. This assertion is profoundly (and demonstrably) incorrect.

Particularly offensive and unjustified is the charge that the undersigned law firm somehow concealed the contents of the agreement, even though MTC inconsistently concedes that the full "text of this agreement has been submitted to the Court by counsel for both parties." (Colosimo Declaration, at ¶ 2). Indeed, this very language of the purportedly undisclosed document was the very basis of earlier motion practice by MTAC, and attached as exhibits to the parties declarations as far back as January of 2009. See, Docket Entries 12 and 13. The Court heard oral argument on the matter in April of 2009 and concluded that the funds should remain where they are in accordance with the terms of the agreement. See, Docket Entry 16.

After the Jaldhi decision came down, this Court, like many others, issued sua sponte orders conditionally vacating attachments in the absence of good cause shown. See, Docket Entry 21. Upon simply being reminded of the existence of

security arrangement reached on consent in this case, the Court readily ruled that the "[p]arties' Agreement controls the funds now so vacatur of attachment no longer of concern. Funds survive vacatur because of agreement." See, Docket Entry 22.

More than a month after the Court withdrew its threat of sua sponte dismissal,[1] MTAC's second law firm applied to be heard anew on the matter, and, by memo-endorsed order

---

[1] MTAC's assertion that its original counsel could not properly address the Court's sua sponte order "in light of ethical conflicts fallout from *Jaldhi*" is irrelevant to the Court's ability to address its own order, which did not seek a response from MTAC.   But it is also especially disingenuous. (MTAC's Memorandum of Law, at 2).   The referenced letter dated November 5, 2010 from Burke & Parsons advised the Court that, "[w]e believe that as a result of *Jaldhi*, we would be in a conflicted position if we were to continue to represent both plaintiffs and defendants. After due consideration, we have determined that this [positional] conflict of interest cannot be waived by the informed consent of our clients." See, Docket Entry 23. However, Burke & Parsons, in fact, continued to represent both plaintiffs and defendants in innumerable other Rule B actions after *Jaldhi*. See, e.g., Central Shipping Co. v. Internaut Shipping Ltd., No. 09 Civ. 06222 (VM); Salmassi v. Euro-American Container Line Ltd., No. 08 Civ. 04982 (RWS); Nikmar Shipping Ltd. v. Bulk Alpe Shipping Ltd., No. 08 Civ. 01996 (HB); Chan Group S.P.A. v. Hassan Ali Rice Export Co., No. 08 Civ. 01201 (PAC); Taganroga Shipping Corp. v. Seaspeed Cargo and Sea Transp. LLC, No. 07 Civ. 07216 (CM); Hawknet, Ltd. v. Overseas Shipping Agencies, No. 07 Civ. 05912 (NRB); SK Shipping Co. v. Eastrade Commodities Inc., No. 06 Civ. 12985 (RJH); Dominion Bulk Int'l S.A. v. Naviera Panoceanica S.A.C., No. 06 Civ. 06854 (LAP). The alleged conflict thus appears to have been nothing more than a pretext, in any event.

dated January 8, 2010, that request was "denied." See, Docket Entry 25.

More than four months after that, MTAC's third law firm also "renewed" MTAC's request for a pre-motion conference on the issue yet again. And, yet again, by memo-endorsed order dated May 14, 2010, that application was "Denied." See, Docket Entry 28.

More than three months after that, the instant motion nonetheless followed. Incredibly, MTAC filed the motion upon the "understanding that the Court deemed the pre-motion conference to be unnecessary or of no benefit to the Court or the Parties." (MTAC's Memorandum of Law, at 1 n.1). This self-serving interpretation of the Court's Orders and Individual Rules of Practice is almost as strained as MTAC's attempt to rewrite the subject security agreement. Indeed, it is belied by MTAC's apparent need to "renew" the request for a pre-motion conference which had previously been denied.

"The law of the case doctrine requires that a 'decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation.'" Katz v. Mogus, No. 07 Civ. 8314 (PKC), *7, 2008 U.S. Dist LEXIS 40497 (S.D.N.Y. May 19, 2008) (Report and Recommendation) (quoting In re PCH Assoc's, 949 F.2d 585, 592 (2d Cir. 1991)). "A court has discretion to revisit a

previous decision if it determines that 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice' is present in the case." Id. at * 8 (quoting Virgin Atlantic Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)); see also, Mayen v. Artist, No. 06 Civ. 14261 (DC), 2008 U.S. Dist. LEXIS 41975, *9 (S.D.N.Y. May 23, 2008) ("Under the 'law of the case' doctrine, a court must usually adhere 'to its own decision at an earlier stage of the litigation.' The Second Circuit has held that courts should not depart from this policy absent 'cogent' or 'compelling' reasons.") (citations omitted) (quoting United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000), and Doe v. New York City Dep't of Social Serv's, 709 F.2d 782, 789 (2d Cir. 1983)).

And "[a] motion to alter or amend a judgment must be filed no later than 28 days after entry of the judgment." Fed. R. Civ. P. 59(e). So MTAC's attempt to characterize its motion as one for reconsideration is unavailing. (MTAC's Memorandum of Law, at 2 n.3).

Moreover, "[a] motion for reargument is appropriate where 'the Court overlooked controlling decisions or material factual matters that were before the court on the underlying motion.'" Frankel v. ICD Holdings S.A., 939 F. Supp. 1124,

1126 (S.D.N.Y. 1996) (quoting Violette v. Armonk Assoc's,
L.P., 823 F. Supp. 224, 226 (S.D.N.Y. 1993)); accord, System
Management Arts Inc. v. Avesta Technologies, Inc., 106 F.
Supp. 2d 519, 521 (S.D.N.Y. 2000) (citing Ameritrust Co. Nat'l
Ass'n v. Dew, 151 F.R.D. 237, 238 (S.D.N.Y. 1993); East Coast
Novelty Co. v. City of New York, 141 F.R.D. 245 (S.D.N.Y.
1992)).

"No affidavits or new material may be submitted.
S.D.N.Y. Civ. R. 3(j). Thus such a motion is limited to the
record that was before the Court on the original motion."
Frankel, 939 F. Supp. at 1126 ("To a substantial extent, this
discussion is based on affidavits that were not before the
Court on the motion for summary judgment and that therefore
are not properly considered on the motion for reargument.");
see also, System Management, 106 F. Supp. 2d at 521 ("A motion
for reconsideration is not the proper avenue for the
submission of new material. Such material should be stricken
and disregarded.") (citing Local Rule 6.3; First Am. Corp. v.
Price Waterhouse LLP, No. M8-85, 1999 WL 148460 (S.D.N.Y.
March 18, 1999); Quartararo v. Catterson, 73 F. Supp. 2d 270,
273 (E.D.N.Y. 1999)).

This rule is to be narrowly construed and strictly
applied. See, Morse Diesel, Inc. v. Fidelity and Deposit Co.,
768 F. Supp. 115, 116 (S.D.N.Y. 1991); Morser v. AT&T

Information Sys., 715 F. Supp. 516, 517 (S.D.N.Y. 1989);
Korwek v. Hunt, 649 F. Supp. 1547, 1548 (S.D.N.Y. 1986),
aff'd, 827 F.2d 874 (2d Cir. 1987); see also, Fireman's Fund
Ins. Co. v. M/V CCNI Antartico, No. 02 Civ. 0087 (LAK), 2002
U.S. Dist. LEXIS 15015 (S.D.N.Y. Aug. 15, 2002) ("Putting the
best face on it, answering papers were about two weeks late
and were received only after the Court decided the motion for
summary judgment.   Thus, there were no opposition papers
before the Court that could have been overlooked . . .
Plaintiff simply does not have the right, by virtue of its own
carelessness, to impose on the Court's resources to consider
the same motion a second time.").

    As discussed above, and as the record makes plain,
nothing was withheld from or misstated to this Court, at least
on the part of plaintiff, and there is nothing new here to
warrant reopening these proceedings yet again.

**POINT II.**          **IN ANY EVENT, THE COURT WAS ENTIRELY CORRECT IN RESPECTING THE PARTIES' SECURITY AGREEMENT.**

Compromise agreements are contracts like any other, to be construed according to general principles of contract law, and the Court should not undertake to modify their terms. See, generally, Red Bull Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999); In re Air Crash Disaster at John F. Kennedy In'CI Airport, 687 F.2d 626, 629 (2d Cir. 1982).

Moreover, the Supplemental Admiralty Rules expressly provide that security may be released or given "by Stipulation of the parties . . . The parties stipulate the amount and nature of such security." Fed. R. Civ. P. E(5)(a); see also, El Paso Production GOM, Inc. v. Chevron U.S.A. Inc., 406 F. Supp. 2d 671, 678 (E.D. La. 2005) ("Having freely given security in exchange for the release of the Barge UR-95, the Owners will not now be heard to complain that it is unfair to require them to maintain that security.").

In the matter sub judice, the parties entered into a
clear agreement regarding security. (Exhibit 1 to Colosino
Declaration). In consideration of plaintiff's promise to
promptly discharge MTAC's cargo at the discharge port, a
partial release of some of the restrained funds, release of
alleged alter-ego funds, and in consideration of plaintiff's
relinquishment of the right to seek security for costs in a
London proceeding, MTAC expressly agreed that the
balance of attached funds would remain in New York as
security. Id. The security agreement provided that
$774,500 for certain itemized claims arising out of a
breach of an unsafe berth warranty by MTAC "will be
secured by funds already attached in NY." Id. The whole
point of the agreement was to resolve security issues and
move forward on the merits. Id.

The instant application comes in direct disregard
of the undertakings made by MTAC's counsel and should not
be countenanced by the Court. Both parties, of course,
reserved their rights "going forward" in this regard.
Id. But this agreement plainly did not contemplate a right
to challenge the underlying, mooted attachment and a right
to thereupon challenge the superseding security agreement
on that basis. The suggestion that such a reservation of
rights, expressly covering only future matters not

8

including security, means that a party might be entitled to renege on the material, dickered terms of the security agreement is just beyond the pale.

In addition, it must be noted that MTAC's position that the weight of the case law favors its position is also misplaced. Attached hereto by way of example are true copies of decisions holding that such security agreements should not be disturbed by Jaldhi, as well as copies, wherever available from the docket, of the particular agreements considered by each court. See, Asia Project Serv's Ltd. v. Usha Martin Ltd., No. 09 Civ. 5084 (WHP) (S.D.N.Y. Apr. 8, 2010) (bond agreement included "reservation of rights" language broader than that in the case at bar); Duck Maritime Corp. v. Olam Nigeria Ltd., No. 08 Civ. 10960 (RJH) (S.D.N.Y. Feb. 18, 2010) (order approving bond included "reservation of rights" language broader than that in the case at bar); Granite Enter's Ltd. v. Virgoz Oils & Fats Pte. Ltd., No. 09 Civ. 4534 (RWS) (S.D.N.Y. Feb. 11, 2010) (stipulation included "reservation of rights" language broader than that in the case at bar); Allied Maritime, Inc. v. Samsun Logix Corp., No. 08 Civ. 3656 (TPG) (S.D.N.Y. Jan. 4, 2010) (stipulation only provided for transfer to escrow account and did not even include agreement that funds remain as

9

security for plaintiff's claim); <u>Central Shipping Co. v.
Internaut Shipping Ltd.</u>, No. 09 Civ. 6222 (VM) (S.D.N.Y.
Nov. 25, 2009) (order included "reservation of rights"
language broader than that in the case at bar); <u>America
Bulk Transp. Ltd. v. Lion Shipholdings</u>, No. 07 Civ. 3818
(LAK) (S.D.N.Y. Nov. 19, 2009) (e-mail correspondence
merely conceded ownership of funds); <u>Navinord S.A. v.
Eastbourne Maritime Ltd.</u>, No. 09 Civ. 3761 (LAK) (S.D.N.Y.
Nov. 19, 2009) (escrow agreement unavailable); <u>Transfield
ER Cape Ltd. v. Crownland Int'l Co.</u>, No. 08 Civ. 08602
(VM) (S.D.N.Y. Oct. 28, 2009) (stipulation only provided
for transfer to escrow account subject to further order of
the court and did not even include agreement that funds
remain as security for plaintiff's claim).

All hold that, even though the <u>res</u> was originally
attached as electronic funds transfers, a subsequently
entered private security agreement withdraws the matter
from the purview of <u>Jaldhi</u>. There is certainly no reason
why this case should be treated any differently.

**CONCLUSION**.

WHEREFORE, plaintiff urges the Court to deny MTAC's motion and grant to plaintiff such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
          August 20, 2010

                         Respectfully submitted,

                         MAHONEY & KEANE, LLP
                         Attorneys for Plaintiff

          By:    _____
                 Garth S. Wolfson
                 11 Hanover Square, Tenth Floor
                 New York, New York 10005
                 (212) 385-1422